IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARIAH V.A., | CV 20–121–M–DWM |
| Plaintiff, | |
| v. | OPINION |
| | and ORDER |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act and her application for Supplemental Social Security Income disability benefits under Title XVI of the Social Security Act.  42 U.S.C. §§ 401–33.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance."  *Id.* (internal quotation marks omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). And, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

A claimant for disability benefits bears the burden of proving that disability exists. 42 U.S.C. § 423(d)(5). Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is unable to do her previous work and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In determining disability, the ALJ follows a five-step sequential evaluation

process. *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520(a)(4)(i)-(v).  The process

begins, at the first and second steps, "by asking whether a claimant is engaged in

'substantial gainful activity' and considering the severity of the claimant's

impairments." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  "If the

inquiry continues beyond the second step, the third step asks whether the

claimant's impairment or combination of impairments meets or equals a listing

under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement." *Id.*

"If the process continues beyond the third step, the fourth and fifth steps consider

the claimant's 'residual functioning capacity' in determining whether the claimant

can still do past relevant work or make an adjustment to other work." *Id.*  At step

five, the burden shifts to the Commissioner. *Tackett*, 180 F.3d at 1099.  "If a

claimant is found to be 'disabled' or 'not disabled' at any step in the sequence,

there is no need to consider subsequent steps." *Id.*

## BACKGROUND

On February 20, 2017, Plaintiff filed an application for disability insurance

benefits and for Supplemental Social Security Income disability benefits.  AR 21.

In both applications, she alleged disability beginning December 1, 2015. *See* AR

53 (onset date amended at hearing).  Her claims were initially denied on September

28, 2017, AR 140–42, and upon reconsideration on April 28, 2018, AR 148–53.

Plaintiff filed a written request for hearing, AR 156–57, which was held on August

13, 2019 by Administrative Law Judge ("ALJ) Michele M. Kelley, *see* AR 47–75.
Plaintiff testified, as did vocational expert Karen Black.  *See id.*  Plaintiff was
represented by counsel.  *Id.*

On September 25, 2019, the ALJ issued a decision denying benefits.  AR
21–38.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful
activity since her onset date.  AR 24.  At step two, the ALJ found Plaintiff had the
following severe impairments: degenerative disc disease of the lumbar spine,
neuropathy, endometriosis, major depressive disorder, generalized anxiety
disorder, borderline personality disorder, obsessive-compulsive disorder ("OCD"),
and posttraumatic stress disorder ("PTSD").  AR 24.  At step three, the ALJ found
Plaintiff did not meet or equal the requirements of a listed impairment.  AR 25.

At step four, the ALJ determined Plaintiff had a residual functioning
capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b),
416.967(b), meaning Plaintiff

> can lift, carry, push, and pull 20 pounds occasionally and 10 pounds
> frequently.  The claimant can stand and walk for two hours out of an
> eight-hour day and sit for six hours out of an eight-hour day.  The
> claimant should avoid concentrated exposure to vibrations, fumes,
> odors, dusts, gases, poor ventilation, and hazards, including
> unprotected heights and dangerous machinery.  The claimant should
> avoid concentrated exposure to noise greater than three out of five on
> the scale set forth in the SCO [Selected Characteristics of Occupations].
> The claimant can understand, remember, and carry out simple tasks.
> The claimant can maintain attention, concentration, persistence, and
> pace for such tasks for an eight-hour workday and 40-hour workweek.
> The claimant can tolerate only occasional interaction with supervisors,

co-workers, and the public.  The claimant can tolerate usual simple work situations and can tolerate only occasional changes in routine work settings.  The claimant should have the option to wear shaded lenses and/or a hat or visor.

AR 28.  While the ALJ found Plaintiff was not able to perform her past relevant work based on the above, AR 36, she found that Plaintiff could perform work existing in significant numbers in the national economy at step five, AR 37. Specifically, the ALJ noted the following positions identified by the vocational expert: office helper, final assembler, and document preparer.  AR 37.

On June 18, 2020, the Appeals Council denied Plaintiff's request for review, AR 3–5, making it a final decision.  *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1161–61 (9th Cir. 2012).  On August 13, 2020, proceeding *in forma pauperis*, (Docs. 1, 3), Plaintiff appealed that decision to this Court, (Doc. 2). Following COVID-19 related extensions, the Commissioner filed the certified administrative record on December 22, 2020.  (*See* Doc. 17.)  The matter was fully briefed as of March 30, 2021.  (*See* Docs. 19, 20, 21.)

## ANALYSIS

The ALJ's specific reasons for giving little weight to Plaintiff's mental health treatment providers' assessment of her work-related functionality are not supported by substantial evidence in the record.  The ALJ also failed to consider Plaintiff's treatment needs in assessing her RFC.  Remand is appropriate.

## I.      Treating Physicians and Providers

Plaintiff first argues that the ALJ improperly discounted the findings of her treating physicians and providers.  In assessing disability, an ALJ may rely on the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Under the "treating physician rule,"[1] the ALJ is required to give deference to the treating physician as follows:

> As a general rule, a treating physician's opinion is entitled to substantial weight.  Nevertheless, the ALJ need not accept the opinion of a treating physician.  If a treating physician's opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. But if the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record.  The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted).

Demi Llovet, FNP, has been Plaintiff's primary care provider since May 2017.  AR 1536.  But Plaintiff has seen numerous healthcare providers and

---

[1] The 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017.  *See* 20 C.F.R. § 416.920c(a).

6

undergone multiple procedures.  *See* AR 347–400 (medical chronology).  Relevant here, her primary care providers for her endometriosis have been Robert Humble, MD and Janice Givler, MD.  Her primary care providers for her knee and ankle issues have been Brent Roster, MD and Michael Wright, MD.  And, for her mental health impairments, her primary care providers have been Nathaniel Hoyme, LCSW; Cory Smith, LCSW; Phillip Holman, MD; Eric Flauvin, PMHNP; and Michael Thein, MD.[2]

As part of her disability claim, she was assessed by state examiners in both 2017 and 2018, first by Timothy Schofield, MD, AR 85–89, and Marsha McFarland, PhD, AR 79–84, in September 2017, and then by Carlos Jusino-Berrios, MD, AR 101–13, and Jose Rabelo, MD, AR 114–19, in April 2018.  Both evaluations concluded that while Plaintiff had mild limitations in her work-related abilities, she had an RFC for sedentary and a MRFC for unskilled work and was therefore not disabled.  *See, e.g.*, AR 122.

In response, Plaintiff got Medical Source Statements regarding her mental ability to perform work-related activities from Dr. Thein, *see* AR 1509–11, and Mr. Hoyme, *see* AR 1533–35.  She also got a Medical Source Statement regarding her physical ability to perform work-related activities from Ms. Llovet, *see* AR

---

[2] Plaintiff has also received care from Saul Rivard, MD; Katherine Krebsbach, DO; Amanda Morey, MD; Kinsey Fisher, APRN; Eric Stone, MD; Michael Woods, MD; and Andrew Denis McCarthy, MD.

1539–44.  The assessments conclude that Plaintiff's mental and physical limitations effectively prevent her from being able to work.  Although the ALJ gave some weight to Dr. Thein, Mr. Hoyme, and Ms. Llovet's opinions and observations elsewhere in the record, she gave little weight to these three assessments, primarily on the ground that their conclusions about Plaintiff's work functionality were not consistent with the evidence in the record, either medical or otherwise.  Because the opinions are contradicted by the state examiners, in rejecting them, the ALJ was required to give "specific and legitimate reasons that are supported by substantial evidence in the record."  *Ford*, 950 F.3d at 1154.

### A.   Michael Thein, M.D.

The record indicates that Plaintiff began seeing Dr. Thein in January 2019 to address her mental health issues.  *See* AR 915–923.  On July 15, 2019, he opined that Plaintiff was "seriously limited" or had "no useful ability to function" in nearly all areas of the mental abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work, including interacting with others, and would miss more than four days of work per month.  *See* AR 1509–11.  The ALJ determined that the record was not consistent with this opinion, specifically because:

> (1) On November 25, 2015, Mr. Smith found a "constricted and blunted" affect, but also found good eye contact, cooperative demeanor, clear speech, intact thought process, good memory, average intelligence, and the ability to spell "world" forward and backward.  *See* AR 828.

8

(2) On February 6, 2017, Plaintiff reported to Dr. Holman that her depression was much improved, her sleep was better, and her anxiety was also improved. *See* AR 583.

(3) On August 9, 2017, Plaintiff reported to Dr. Givler that she was "mentally stable." *See* AR 603.

(4) On September 13, 2018, Dr. Holman's progress notes indicate that Plaintiff denied any depression and reported that she was sleeping and eating well and her anxiety was okay. *See* AR 927.

(5) On February 11, 2019, Dr. Thein noted that Plaintiff's mood was "more stable and she is less depressed" and that medication was helping her anxiety. *See* AR 912.

(6) On July 15, 2019, [3] Dr. Thein found a depressed mood and blunted affect, but also found fair eye contact, pleasant and cooperative behavior, normal speech, logical thought process, and grossly intact cognition. *See* AR 921.

Plaintiff challenges the ALJ's determination on the ground that snapshots of mental improvement are not necessarily concomitant with the capacity to function in the workplace. That argument has merit. In *Garrison v. Colvin*, the Ninth Circuit determined it was error for an ALJ "to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." 759 F.3d 995, 1017 (9th Cir. 2014). The court explained that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is

---

[3] The ALJ's citation to 13F/13, or AR 921, is to a Psychiatric Evaluation completed on January 31, 2019. While this error by itself is insufficient to undermine the ALJ's conclusion, it evidences an attempt to pick specific instances in Plaintiff's medical records to fit the ALJ's narrative of improvement.

error for an ALJ to pick a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*; *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the record reveals that while some of Plaintiff's symptoms came and went (panic attacks, trouble sleeping, low energy), other symptoms have consistently persisted (depression, anxiety):

2016

- January 7 and 16: Mr. Smith – found Plaintiff's clinical scores consistent with "severe depression," AR 817–20;
- December 12: Dr. Holman – "she has been getting more depressed over the past six months," "difficulties with sleep, appetite, energy," "complains of increased anxiety," has worsening panic attacks, AR 589–90;

2017

- January 11: Dr. Holman – "depression continues," "sleep still off," "anxiety still problematic," AR 587;
- April 14: Dr. Holman – "moderate depression," "sleep off, appetite, energy also off," and "anxiety has been a lot worse," AR 580;
- July 18: Dr. Holman – "depression is still there" and "anxiety has been also a problem," AR 577;
- August 18: Dr. Holman – "anxiety has been more of a problem," AR 574;
- October 6: Dr. Holman – "depression is worse" and "anxiety is also worse," AR 942;

- November 6: Dr. Holman – "depression is not as bad" but "anxiety is still a problem for her," AR 939;

2018

- March 15: Dr. Holman – "depression has increased in the past month" and "sleep problems," AR 936;
- May 14: Dr. Holman – "depression has gotten worse" and "appetite and energy also not well," AR 933;
- November 19: Dr. Holman – "increased depression," AR 924;

2019

- January 31: Dr. Thein – ability to control anxiety through medication only partially successful but medication of depression "has certainly headed this patient in the right direction," AR 912;
- January 31: Dr. Thein – "Psychiatric Evaluation" stating that Plaintiff is "at high risk for decompensation," AR 915; and
- February 11: Dr. Thein – noting her continued depression and that she "continues to avoid leaving her house as much as possible," AR 909.

The record also shows that instances of improvement cited by the ALJ merely regard her mood or general affect, not her ability to work.  Accordingly, substantial evidence does not support the specific reasons the ALJ gave for rejecting Dr. Thein's assessment of Plaintiff's mental functionality.

The Commissioner further argues, however, that Dr. Thein's assessment may be disregarded as "brief, conclusory, and inadequately supported by clinical findings."  (Doc. 20 at 13, 15 (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).)  The Commissioner also argues that "contradictions between a doctor's opinion and that doctor's own clinical notes and observations 'is a clear and convincing reason for not relying on the doctor's opinion[.]'"  (*Id.* at 15

11

(quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).)  But as discussed above, Dr. Thein's workplace assessment does not contradict his notes or those of other care providers that indicate Plaintiff 's symptoms varied day-to-day. To the contrary, the record shows a consistent struggle with depression, anxiety, and PTSD as discussed above.  "Dr. [Thein]'s statements must be read in context of the overall diagnostic picture he draws."  *Holohan*, 246 F.3d at 1205.  Based on the above, it was error for the ALJ to discredit his opinion.

## B.    Nathan Hoyme, LCSW

The ALJ also gave little weight to the opinions of Mr. Hoyme, who began seeing Plaintiff for her mental health issues as early as 2013.  *See* AR 1535.  On August 8, 2019, Mr. Hoyme opined that "any expectations of [Plaintiff] being able to consistently follow instructions, cope with normal workplace day-to-day pressures, and/or maintain regular and punctual attendance should be judiciously considered." AR 1531.  On August 9, 2019, Mr. Hoyme also completed a work-related activities assessment, opining that the claimant was unable to meet competitive standards or had no useful ability to function in all areas of the mental abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work, including interacting with others, and would miss more than four days of work per month due to her impairments or treatment.  AR 1533–35.  The ALJ rejected these opinions, primarily on the same grounds discussed in the context of Dr. Thein.  *See*

12

AR 33–34.  According to the ALJ, specific instances of improvement sprinkled throughout Plaintiff's mental health records discount his functionality assessment. *See id.*  As discussed above, such "cherry-picking" is not substantial evidence contradicting his opinions.

Moreover, and somewhat ironically, the ALJ also undervalued Mr. Hoyme's opinion on the ground that he "is focused on episodic decompensations, rather than the mental health treatment record as a whole."  AR 34.  However, Mr. Hoyme's treatment summary indicates he met with Plaintiff no less than 35 times from 2016 to 2019, AR 1528, and that he has been treating her since 2013, AR 1535.  And his assessment does not specifically tie his functional capacity conclusions to any single event over that time frame.  To the contrary, he addresses Plaintiff's mental state broadly and concludes that there is a direct correlation between her mental condition and her "physical experience of pain."  AR 1533.

Accordingly, substantial evidence does not support the reasons the ALJ gave for rejecting Mr. Hoyme's opinions.

### C.    Deni Llovet, FNP

Finally, the ALJ gave little weight to the opinions of Ms. Llovet, who has been treating Plaintiff as her general provider since May 2017.  AR 1536.  On March 20, 2018,[4] Ms. Llovet completed a Third-Party Function Report, generally

---

[4] This date is cited incorrectly as May 20, 2018 in the ALJ's decision.  *See* AR 34.

indicating that Plaintiff's pelvic pain prevents her from performing some tasks and her mental health issues prevent her from interacting normally with others.  AR 294–301.  On August 5, 2019, Ms. Llovet prepared a "Medical Source Statement," opining that Plaintiff could frequently lift up to 10 pounds and occasionally lift 11 to 20 pounds; occasionally carry up to 10 pounds; sit for one hour, stand for 10 minutes, and walk for 15 minutes at a time; sit for 7 hours, stand for 10-15 minutes and walk for 45-50 minutes of an 8-hour work day; walk 50 yards without the use of a cane; and occasionally climb stairs, stoop, or crouch.  AR 1539–44.  On August 8, 2019, Ms. Llovet also provided a letter stating that Plaintiff is unable to work due to both her mental and physical impairments.  *See* AR 1536–37.

The ALJ concluded that the evidence in the record was not consistent with Ms. Llovet's opinion of Plaintiff's physical abilities on the grounds that: (1) Plaintiff refuses to undergo an oophorectomy to ease her endometrial pain symptoms; (2) medical records show her endometriosis was improving; (3) medical records show her motor and sensory functions were improving; (4) Ms. Llovet "appeared to rely on [Plaintiff]'s subjective allegations of her functional abilities, as indicated by her note that the limitations were 'stated'"; and (5) there is no support in the record for use of a cane.  AR 34.

As it relates to Plaintiff's refusal to undergo an oophorectomy, the regulations implementing the Social Security Act do require a claimant to follow a

14

prescribed course of treatment.  *See* 20 C.F.R. §§ 404.1530(b), 416.930(b).

However, "it is improper to deny benefits on the basis of a declined surgery when

surgery is only a *suggested* rather than a *prescribed* course of treatment."  *See*

*Aguirre v. Astrue*, 2009 WL 3346741, at *5 (C.D. Cal. Oct. 14, 2009) (collecting

cases).  In this case, although an oophorectomy was recommended, *see* AR 812,

1382, 1537, the medical evidence does not indicate that such a surgery was ever

prescribed.  Moreover, as argued by Plaintiff, it is reasonable for her to refuse to

undergo forced sterilization, *see* § 404.1530(c) (outlining good reasons for not

following treatment).  Thus, this does not qualify as substantial evidence to reject

Ms. Llovet's opinion.  Nor does Ms. Llovet's qualified assessment that Plaintiff's

lift and carry abilities are as "stated."  *See* AR 1539.  While an ALJ is "not

required to take medical opinions at face value" if they lack adequate explanation,

*Ford*, 950 F.3d at 1155, the same "lift" and "carry" findings were made by the

state examiners, *see* AR 97 (Schofield), 115 (Rabelo).  Thus, the record supports,

as opposed to contradicts, Plaintiff's stated abilities.

That said, Plaintiff's general physical condition is a closer question.  The

ALJ relies on portions of the record that show Plaintiff was experiencing less pain

from her endometriosis and greater mobility.  But those same records show that

pain related to her endometriosis persisted, *see* AR 724, so much so that her

providers recommended an oophorectomy to remove her ovaries as discussed

above, *see* AR 1497.  And while she initially stated that Aygestin had helped with
the pain, she reported in February 2019 that Aygestin was not helping at all.  *See*
AR 1386.  But at the same time, Dr. Givler described her endometriosis as
"minimal" in both September 2017, AR 724, and March 2019, AR 1372.  Thus, the
record on this issue is decidedly mixed.  And the record supports the ALJ's finding
that Plaintiff's motor function improved in 2019, following surgery on her ankles,
*see* AR 864, 867, 1562, and knees, *see* AR 1472–83.  And while the record does
contain some reference to use of a cane, *see* AR 104–05, 1528, 921, there are also
references to her having a "normal" or unimpeded gait.  *See, e.g.*, AR 1479, 1562.

Considered as a whole, the record is mixed on Plaintiff's physical functional
capabilities.  In the context of judicial review, because the evidence as to Plaintiff's
physical condition is susceptible to more than one rational interpretation, and the
ALJ's findings are "supported by inferences reasonably drawn from the record,"
those findings must be upheld.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th
Cir. 2008).  Therefore, the ALJ did not err in giving little weight to Ms. Llovet's
physical assessment.[5]

## II.    The Listings

---

[5] Ms. Llovet bases some of her conclusions on the interplay between Plaintiff's
mental and physical impairments.  *See* AR 1537.  The ALJ did not provide any
specific reasons for rejecting Ms. Llovet's opinions regarding Plaintiff's mental
functionality.

At step three of the ALJ's sequential evaluation, the claimant can establish disability if she proves that her impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter App. 1). *Kennedy*, 738 F.3d at 1175–76.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  *Id.* at 1176 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  Put differently, "[t]he listings define impairments that would prevent an adult, regardless of his age, education or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Zebley*, 493 U.S. at 532 (quoting 20 C.F.R. § 416.925(a) (1989)).  Thus, a claimant must show that she meets "*all* of the specified medical criteria" for a specific listing as "[a]n impairment that manifests in only some of those criteria, no matter how severely, does not qualify."  *Id.* at 530 (footnote omitted).

In determining whether a claimant with a mental illness meets a listed impairment, the ALJ must follow a "special technique" to evaluate the claimant's symptoms and rate her functional limitations.  20 C.F.R. § 404.1520a(a).  Specifically, the ALJ must consider: (1) whether specific diagnostic criteria are met under Paragraph A (the "A criteria"); and (2) whether specific impairment-related functional limitations are present under Paragraphs B (the "B criteria") or C (the "C criteria").  20 C.F.R. § 404.1520a(b).  Paragraph A substantiates the

presence of a particular mental disorder.  App. 1. at § 12.00(A)(2)(a).  Paragraphs

B and C, on the other hand, describe impairment-related functional limitations that

are incompatible with the ability to do any gainful activity.  *Id.* at § 12.00(A)(2)(b),

(c).

Here, Plaintiff contends that her mental impairments satisfy the criteria for

12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-

compulsive disorders), 12.08 (personality and impulse-control disorders),[6] and

12.15 (trauma and stressor-related disorders).  In her decision, the ALJ elected to

analyze all four impairments simultaneously.  *See* AR 26–27.  The ALJ apparently

assumed the existence of the A criteria for all four listings, as she engaged in no

discussion as to whether the requirements of Paragraph A were met.  However, the

ALJ determined that these impairments were not sufficiently severe to meet the

requirements of Paragraph B or C.  *Id.*  However, consideration of Dr. Thein and

Mr. Hoyme's opinions may impact the ALJ's step three determination.

## III.   Treatment

Plaintiff further argues that the ALJ erred in assessing her residual

functioning capacity ("RFC") at step four "by failing to analyze the mechanics of

treatment, specifically the frequency of treatment, duration and disruption of

---

[6] To meet or equal listing 12.08, a claimant must satisfy the requirements of
Paragraphs A and B.  App. 1. at § 12.00(A)(2).

routine, in order to improperly discount the treating healthcare providers as well as [Plaintiff]'s testimony." (Doc. 19 at 21.)  In doing so, Plaintiff relies on Social Security Rule 96-8p, or SSR 96-8p,[7] which requires that the frequency and duration of treatment be incorporated into the RFC of a claimant.  In response, the Commissioner does not argue that the ALJ considered treatment needs, but rather that her failure to do so was harmless.  That is not persuasive.

To show that an ALJ's error was not harmless, a claimant must demonstrate a "substantial likelihood of prejudice."  *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  Here, the Commissioner argues the failure to consider treatment was not prejudicial because the record shows that Plaintiff "averaged about one appointment every two weeks" and that there is no evidence that she "would miss work for her medical appointments." (Doc. 20 at 26.)  But neither of these conclusions is supported by the record.  To the contrary, the record shows that Plaintiff averaged the following treatment days per month each year: 2016–2.33, 2017–3.92, 2018–3.75, and 2019–5.14.  And, both Dr. Thein and Mr. Hoyme specifically opined that Plaintiff would be absent from work more than four days

---

[7] Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration and are to be relied upon as precedents in adjudicating cases.  20 C.F.R. § 402.35(b)(1); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) ("[Social Security Rulings] do not carry the 'force of law,' but they are binding on ALJs nonetheless.").

per month due to her impairments and/or her treatment.  *See* AR 1511, 1535.

While the ALJ considered Plaintiff's physical and mental impairments and daily

activities, *see* AR 32–33, 36, she did not consider how Plaintiff's treatment needs

would potentially interfere with her ability to work.  The prejudice of this omission

is demonstrated in the vocational expert's hypothetical.  Ms. Black testified that if

an individual were off-task at least 20% of an eight-hour workday or 40-hour work

week, including normal work breaks, that individual would not be able to perform

competitive work.  *See* AR 72.  As argued by Plaintiff, the amount of time needed

for medical care alone could potentially exceed this threshold.  Accordingly, it was

error for the ALJ to not consider Plaintiff's treatment needs.

## IV.    **Vocational Expert Hypotheticals**

Hypothetical questions posed to the vocational expert must set out all the

limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d

418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to

the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881

F.2d 747, 756 (9th Cir 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th

Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record,

then the vocational expert's testimony that the claimant could perform other work

existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at

422.  As discussed above, the ALJ did not provide adequate reasons for finding Dr.

Thein and Mr. Hoyme's opinions unpersuasive or for failing to consider Plaintiff's treatment needs. These errors may have affected the ALJ's hypothetical, and in turn, they undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

## V.   Remand

Based on the foregoing, remand is warranted.  Such a remand can take the form of either a "remand for further proceedings or for an award of benefits."  42 U.S.C. § 405(g).  Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–100 (9th Cir. 2014).  But it should only do so if the record has been fully developed and there are no outstanding issues left to be resolved. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).  Here, there are outstanding issues to be resolved.  On remand, the ALJ should reevaluate the opinions of Dr. Thein and Mr. Hoyme, as well as consider Plaintiff's treatment needs.  It is therefore not clear that Plaintiff is disabled.  Remand for further proceedings is appropriate.  *Treichler*, 775 F.3d at 1105.

### CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiff's request for remand is GRANTED.  The Commissioner's decision is REVERSED and this matter is

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

proceedings consistent with this opinion.

DATED this 28th day of April, 2021.

Donald W. Molloy, District Judge
United States District Court